**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

_____

No. 25-12376

Non-Argument Calendar

_____

SCOTT WILLIAM CARTLIDGE,

*Plaintiff-Appellant,*

*versus*

ACTING COMMISSIONER OF THE SOCIAL SECURITY
ADMINISTRATION,

*Defendant-Appellee.*

_____

Appeal from the United States District Court
for the Northern District of Florida
D.C. Docket No. 1:24-cv-00082-MW-ZCB

_____

Before JORDAN, JILL PRYOR, and KIDD, Circuit Judges.

PER CURIAM:

Scott Cartlidge appeals the district court's order affirming the Commissioner of Social Security's decision denying his application for benefits. He argues that the administrative law judge ("ALJ") erred in assessing his residual functional capacity. After careful review, we affirm.

## I.

In 2019, Cartlidge applied for disability insurance benefits and supplemental security income with the Social Security Administration, asserting that he was disabled because he suffered from bipolar disorder.[1] He received two evidentiary hearings on his application.[2]

Cartlidge testified in support of his application. In his testimony, he described the limitations he experienced due to his bipolar disorder. He explained that he experienced mood swings, irritability, depression, and anxiety.

He reported that he had good days and bad days. He said that on most bad days he was able to leave the house if he had a medical appointment. But, approximately three days a month, he experienced a bad day that left him unable to leave his house for

---

[1] Because we write for the parties, we assume their familiarity with the underlying record and include only what is necessary to resolve this appeal.

[2] After the first evidentiary hearing, an ALJ found that Cartlidge was not disabled. The appeals council later vacated that decision and remanded for further proceedings. On remand, Cartlidge received a second evidentiary hearing.

appointments. He stated that on these days he could not be around many other people.

The record before the ALJ also included Cartlidge's medical records, which showed that he regularly received mental health treatment. In addition, the record included reports from consulting and examining medical providers who opined about the limitations that he faced.

After reviewing the entire record, the ALJ issued a decision using the five-step sequential evaluation framework to evaluate whether Cartlidge was disabled. At the first step, he found that Cartlidge had not engaged in substantial gainful activity since May 2013, which was the onset-of-disability date he asserted. The ALJ noted that Cartlidge had worked since May 2013 but determined that his "earnings from such work activity did not rise to the level of substantial gainful activity." Doc. 10-1 at 25.[3]

At the second step, the ALJ found that Cartlidge suffered from several severe impairments, including bipolar disorder. At the third step, he determined that Cartlidge did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment.

The ALJ then assessed Cartlidge's residual functional capacity. He concluded that Cartlidge could perform medium work subject to certain limitations, including that he could only "perform[] simple, routine tasks"; "mak[e] simple work-related decisions";

---

[3] "Doc." numbers refer to the district court's docket entries.

have "occasional interaction with supervisors, coworkers, and the public"; and face "few changes" to his work routine. *Id.* at 27.

In assessing Cartlidge's residual functional capacity, the ALJ considered Cartlidge's testimony, including that his bad days caused him to cancel appointments approximately three days each month. Although Cartlidge's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," the ALJ found that his "statements concerning the intensity, persistence[,] and limiting effects of these symptoms [were] not entirely consistent with the medical evidence and other evidence in the record." *Id.* The ALJ then discussed in detail Cartlidge's medical records, including the treatment notes from his medical providers and the opinions from the consulting medical providers. According to the ALJ, the medical evidence showed that Cartlidge received ongoing mental health treatment but did "not establish the continued presence of symptoms of such severity as to prevent the performance of all work" and did not "fully support his subjective complaints." *Id.* at 31.

At step four of the sequential-evaluation framework, the ALJ found that Cartlidge was able to perform his past work as a janitor because "[t]his work does not require the performance of work-related activities precluded by [Cartlidge's] residual functional capacity." *Id.* at 32. Although the ALJ could have stopped the analysis there, he proceeded to step five and determined that even if Cartlidge could not return to his past work as a janitor, there were other jobs in significant numbers in the national economy that he could

perform, including hospital cleaner, warehouse worker, and landscape worker. Based on these findings, the ALJ concluded that Cartlidge was not disabled and denied his application for benefits.

Cartlidge sought review of the denial from the appeals council. He submitted to the appeals council one piece of new evidence: a one-paragraph letter from a nurse practitioner who treated him. She reported that because of the symptoms from his bipolar disorder, Cartlidge "has and will continue to find maintaining employment problematic." *Id.* at 43. The appeals council determined that there was not a reasonable probability that this letter would change the outcome of the decision and denied review.

Cartlidge then filed an action in district court challenging the Commissioner's decision. A magistrate judge prepared a careful and thorough recommendation that the district court affirm the Commissioner's decision denying benefits. Cartlidge objected to the recommendation. The district court adopted the recommendation and affirmed the Commissioner's decision. This is Cartlidge's appeal.

## II.

We review the Commissioner's decision for substantial evidence, but we review *de novo* the legal principles upon which the decision is based. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). Substantial evidence refers to "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* Our limited review precludes us from "deciding the facts

anew, making credibility determinations, or re-weighing the evidence." *Id.* "Even if we find that the evidence preponderates against the [Commissioner's] decision, we must affirm if the decision is supported by substantial evidence."[4] *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).

### III.

A disabled individual may be eligible for disability insurance benefits or social security income benefits. 42 U.S.C. §§ 423(a)(1); 1382(a). An individual is considered disabled if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* §§ 423(d)(1); 1382c(a)(3)(A).

The Social Security Administration uses a five-step process to determine whether a claimant is disabled. *See Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). The agency considers: (1) whether the claimant has engaged in substantial gainful activity; (2) if not, whether he has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals the medical listings; (4) if not, whether he can perform his past relevant work in light of his

---

[4] On appeal, Cartlidge criticizes the substantial evidence standard as "profoundly undemocratic" and asserts that the Commissioner's social security decisions should receive "the full juridical review that non-administrative agency cases face on appeal." Appellant's Br. 10. Despite his critique of the substantial-evidence standard, however, he acknowledges that it applies to his appeal.

residual functional capacity; and (5) if not, whether, based on his age, education, residual functional capacity, and work experience, he can perform other work found in the national economy. 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4).

At step four of this framework, an ALJ must assess a claimant's residual functional capacity, which is defined as the most the claimant can do despite his limitations. *Id.* §§ 404.1545(a)(1); 416.945(a)(1). In assessing residual functional capacity, the ALJ must consider all the claimant's medically determinable impairments, including those that are not severe. *Id.* §§ 404.1545(a)(2); 416.945(a)(2). In evaluating a claimant's mental abilities, the ALJ must "first assess the nature and extent" of the claimant's "mental limitations and restrictions" and "then determine [his] residual functional capacity for work activity on a regular and continuing basis." *Id.* §§ 404.1545(c); 416.945(c).

Cartlidge argues on appeal that the ALJ erred in assessing his residual functional capacity by failing to include the limitation that he would miss three days of work per month. In arguing that the ALJ should have incorporated this limitation into his residual functional capacity, Cartlidge relies on his testimony that his bipolar disorder caused him to cancel medical appointments three days a month. He says that from this testimony the ALJ should have extrapolated that he would miss three days of work per month.

In effect, Cartlidge is challenging the ALJ's decision not to fully credit his testimony about the intensity and limiting effects of the symptoms he experiences due to his bipolar disorder. But an

ALJ is not necessarily required to credit a claimant's subjective testimony. Instead, an ALJ may discredit a claimant's testimony so long as the ALJ "articulate[s] explicit and adequate reasons for doing so." *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002).

Here, the ALJ did exactly that. The ALJ indicated that he had considered Cartlidge's subjective testimony and then explained why he was not fully crediting Cartlidge's testimony: because it was not entirely consistent with the medical evidence and other evidence in the record, which the ALJ reviewed at length. We cannot say that the ALJ erred in not fully crediting Cartlidge's testimony and as a result excluding from the residual functional capacity assessment that Cartlidge would be unable to work three days per month.

In challenging the ALJ's decision, Cartlidge relies heavily on our decision in *Simon v. Commissioner, Social Security Administration*, 7 F.4th 1094 (11th Cir. 2021). In that case, a claimant's treating medical provider opined that the claimant's bipolar disorder significantly impaired his ability to function under stress, maintain focus, or interact appropriately with others in a work setting. *Id.* at 1105. But the ALJ gave little weight to these opinions because the ALJ found that the opinions were inconsistent with the medical provider's treatment notes. *Id.* On appeal, we concluded that the ALJ erred because the "isolated entries in [the provider's] treatment notes indicating that [the claimant] was at times stable on his meds, without more, cannot constitute or contribute to good cause to reject [the provider's] opinions." *Id.* at 1106.

We do not see how *Simon* helps Cartlidge. Unlike the claimant in *Simon*, Cartlidge does not argue that the ALJ erred in rejecting an opinion from his medical provider about the degree of his limitations due to his bipolar disorder. Instead, Cartlidge raises a different issue—that the ALJ erred in rejecting a portion of his subjective testimony.[5] And we cannot say that the ALJ erred in making this credibility determination, which was supported by substantial evidence.

On appeal, Cartlidge raises one other attack on the ALJ's decision. He says that because he has not held a full-time job in at least ten years and because bipolar disorder is his only impairment, it follows as a matter of "logic[]" that his bipolar disorder has left him unable to hold a full time job. Appellant's Br. 25. In effect, Cartlidge seeks to change the test for whether a claimant is disabled from the five-step sequential evaluation framework set forth in the

---

[5] We acknowledge that on appeal, Cartlidge does points to one piece of medical opinion evidence: the nurse practitioner's letter that he submitted to the appeals council, which opined that he "has and will continue to find maintaining employment problematic." Doc. 10-1 at 43. But we note that Cartlidge has not raised on appeal any challenge to the appeals council's decision finding that there was no reasonable probability that this letter would change the outcome of the decision and declining review. But even assuming he adequately raised a challenge to the decision of the appeals council, we find no error in its decision. Importantly, the nurse practitioner provided an opinion on Cartlidge's ability to work. This ultimate question is reserved exclusively to the Commissioner, and neither an ALJ nor the appeals council is required to analyze a medical provider's statement that a claimant is unable "to work" or "to perform regular or continuing work." 20 C.F.R. §§ 404.1520b(c)(3)(i); 416.920b(c)(3)(i).

Social Security regulations to an inquiry asking solely whether the claimant (1) has not engaged in substantial gainful activity and (2) suffers from a severe impairment. But this is not the test for evaluating disability; instead, "an ALJ must evaluate the claimant's case" using the five-step sequential evaluation framework. *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004); *see* 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4). And the fact that Cartlidge has not completed full-time work in ten years does not change that substantial evidence supports the ALJ's determination that he was not disabled.

Because substantial evidence supported the ALJ's assessment of Cartlidge's residual functional capacity and the determination that he was not disabled, we affirm the Commissioner's decision.

**AFFIRMED.**